# United States Court of Appeals for the Federal Circuit

2008-7129

PHILIP E. CUSHMAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kevin A. Calia, Morrison & Foerster LLP, of San Francisco, California, argued for claimant-appellant.

Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Jeanne E. Davidson, Director, and Allison Kidd-Miller, Trial Attorney. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Tracey P. Warren, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Mary J. Schoelen

# United States Court of Appeals for the Federal Circuit

2008-7129

PHILIP E. CUSHMAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-3207, Judge Mary J. Schoelen.

_____

DECIDED: August 12, 2009

_____

Before SCHALL, PLAGER, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

This case involves an alleged violation of a veteran's right to due process under the Fifth Amendment to the United States Constitution, where the medical record on which his service-connected disability claim was evaluated contained an improperly altered document. In contending that a veteran has a protected property interest requiring fair adjudication of his claim for disability benefits, the Appellant raises a constitutional issue of first impression for this court. For the reasons discussed below, we find that a veteran alleging a service-connected disability has a due process right to fair adjudication of his claim for benefits. We further find that Mr. Cushman's due

process rights were violated in this case by the consideration of tainted medical evidence. We vacate the contrary decision of the Court of Appeals for Veterans Claims ("Veterans Court") and remand the case with instructions for a new hearing.

## I. BACKGROUND

Philip Cushman served in a United States Marine Corps combat infantry battalion in Vietnam during the Vietnam War. While he was fortifying a bunker in Vietnam, a heavy sandbag fell on Mr. Cushman's back and damaged his spine. He was honorably discharged in January of 1970. Mr. Cushman underwent four spinal surgeries to treat his injury and has received continuous pain medication.

In October of 1974, Mr. Cushman filed a disability claim with the Department of Veterans Affairs ("DVA") at the Portland Regional Office. Following three years of interaction with medical examiners and Adjudication Officers at the Regional Office, the Board of Veterans' Appeals ("Board") found that Mr. Cushman's injury was service connected, and classified his symptoms as "pronounced" (a grade above "severe") with "persistent symptoms" and "little intermittent relief." See 38 C.F.R. § 4.71a (1982) (diagnostic code 5293). Mr. Cushman received a 60% disability rating, which is the maximum scheduled rating for a back injury.

Mr. Cushman secured a job as a manager at a flooring store. The job required some bending and lifting work, as well as supervision and paperwork. During his time on the job, Mr. Cushman's back condition worsened. Mr. Cushman avoided sitting and standing at work whenever possible. During his last few months at work he would typically lie flat on his back behind the store counter to fill out paperwork and whenever

it was not necessary to move around. In November of 1976, Mr. Cushman was asked to resign his position at the warehouse due to his inability to perform his job duties.

In October of 1976, Mr. Cushman went to the Portland DVA Outpatient Clinic to have his condition reassessed. Records from that visit diagnosed him as having a postoperative ruptured intervertebral disc, with radiculopathy and degenerative joint disease affecting his lumbar and lumbosacaral spine. In November of 1976, when Mr. Cushman resigned from his job, he returned to the DVA Outpatient Clinic for another assessment. This assessment, dated November 15, 1976, was the last entry in Mr. Cushman's medical record before his files were sent to the Portland Regional Office. The last comment in the record stated, "Is worse + must stop present type of work."

Mr. Cushman filed a request with the DVA for a total disability based upon individual unemployability ("TDIU") rating in May of 1977. With his request, Mr. Cushman included a letter from his former employer explaining that Mr. Cushman could not continue to work at the flooring store because he was always lying on his back to do paperwork. The following July, the Regional Office denied Mr. Cushman's claim without obtaining his medical records. Mr. Cushman appealed to the Board. In February of 1978, the Board vacated the denial and remanded the case to the Regional Office with instructions to consider medical evidence in evaluating Mr. Cushman's claims.

The Regional Office obtained Mr. Cushman's medical records from the DVA Outpatient Clinic, and gave him a new hearing. In November of 1978, the Regional Office again denied Mr. Cushman's claim. The Regional Office did not discuss any medical evidence in its decision, although Mr. Cushman's medical file was included in the record. Mr. Cushman appealed again to the Board.

In April of 1980, the Board affirmed the decision of the Regional Office. Although the Board did not cite any particular evidence on which it relied in making its decision, the Board concluded that "the evidence fails to show the presence of symptomology which would preclude sedentary employment." The medical record before the Regional Office and Board, however, differed from the medical record on file at the DVA Outpatient Clinic. Namely, one of the doctor's entries had been altered to change the language "Is worse + must stop present type of work" to instead read, "Is worse + must stop present type of work, or at least [] bend [] stoop lift." (emphasis added, brackets indicate illegible or stray marks). The altered record also contained the additional entry, "says he is applying for reevaluation of back condition," which does not appear in the official record on file with the Outpatient Clinic. The alterations appeared in the last, i.e., most recent, doctor's notes documenting Mr. Cushman's condition.

Mr. Cushman sought reconsideration of the Board's 1980 decision. In 1982, the Board affirmed its prior decision based on the same evidentiary record.

During this time, Mr. Cushman also filed a claim for disability benefits from the Social Security Administration ("SSA"). The SSA requested Mr. Cushman's medical records from the DVA to consider in determining Mr. Cushman's eligibility for SSA disability benefits. The DVA sent to the SSA the version of Mr. Cushman's medical record that was on file with the Regional Office, i.e., the altered version. The SSA denied Mr. Cushman's claim, repeating in its decision language that appears only in the altered version of Mr. Cushman's record.

Mr. Cushman requested reevaluation and a TDIU rating in 1994. He returned to the Outpatient Clinic for another assessment of his back condition. Based on the

medical record of that visit, the DVA found him to be incapable of substantially gainful employment, and granted his TDIU rating.  Mr. Cushman has received TDIU benefits since August of 1994.

Mr. Cushman first discovered that there were two versions of his medical record in October of 1997.  Mr. Cushman went to the DVA hospital to review his records in preparation for another hearing before the Board, this time seeking an earlier effective date for his TDIU rating.  He also reviewed the record from his prior proceedings before the Regional Office and Board.  He noticed that the medical record attached to his claim adjudication did not match the medical record on file at the DVA hospital.  The file at the DVA hospital contained only the original, unaltered document.

Mr. Cushman wrote to the DVA about the discrepancy between the two versions of his medical record.  The DVA conducted an investigation that confirmed that Mr. Cushman's medical record had been altered.  In response to Mr. Cushman's inquiry, the Chief Executive Officer of the Portland Regional Office sent Mr. Cushman a letter in which he acknowledged the discrepancy between the two medical records, and explained that the DVA was unable to locate the original (wet ink) record among its files. He also apologized that the DVA was unable to "arrive at a reasonable explanation" for the nonconforming records.  He confirmed that the official record is the one without the additional entries.  The DVA instructed the Portland Regional Office to destroy all copies of the altered document in Mr. Cushman's file.  The Office of Inspector General opened an investigation for fraud, but closed it three weeks later as unsubstantiated, two days after receiving the DVA's response to the complaint.

Upon learning of the nonconforming records, Mr. Cushman challenged the Regional Office's 1977 decision, and the Board's 1980 and 1982 decisions as containing clear and unmistakable error ("CUE"). He argued that those decisions were based on medical records that were improperly altered to understate his disability. In February of 1999, the Board denied his claim on grounds that the 1977 decision was subsumed by the 1980 and 1982 decisions by the Board. The Board did not address Mr. Cushman's argument that the 1980 and 1982 decisions imported the same CUE.

Mr. Cushman timely appealed to the Veterans Court. In November of 2001 the Veterans Court affirmed the Board with respect to the 1977 decision, and found that it did not have jurisdiction to review the 1980 and 1982 decisions because Mr. Cushman did not properly raise a CUE claim for those decisions.

Mr. Cushman timely appealed to this court, and argued again that the 1977, 1980, and 1982 decisions contained CUE. He also argued that the process used to adjudicate his claims violated his due process rights. During oral argument, this court questioned Mr. Cushman's counsel about the consideration given to the merits of his CUE claims below. This court then asked the government's counsel whether the merits of Mr. Cushman's claim had ever been decided, and how he could receive such a hearing. The government's counsel explained that the CUE claims were not decided, and if this court affirmed the Veterans Court's decision, Mr. Cushman would be free to raise those claims before the Board. In April of 2002, this court summarily affirmed the Veterans Court.

In October of 2003, Mr. Cushman moved the Board to reverse its 1980 and 1982 decisions. Mr. Cushman argued that consideration of the improperly altered medical

record constituted CUE. He also argued that the Board incorrectly interpreted the governing regulations and failed to construe the term "substantially gainful employment." In August of 2005, the Board ruled that the 1980 and 1982 decisions did not contain CUE because the decisions gave no indication that the Board relied specifically on the altered document. It was therefore not possible to prove that consideration of the altered document was outcome determinative, as required by the CUE standard. The Board also rejected Mr. Cushman's arguments regarding the Board's previous interpretation of the governing regulations and statutory construction.

Meanwhile, Mr. Cushman filed a civil action in the United States District Court for the District of Oregon regarding the denial of his social security disability claim. The district court remanded Mr. Cushman's case for further evaluation by the Social Security Office. Mr. Cushman appealed to the United States Court of Appeals for the Ninth Circuit. In April of 2006, the Ninth Circuit reversed the district court and remanded his disability claim for immediate payment of benefits. The Ninth Circuit also found that Mr. Cushman's medical record had been "fraudulently altered" and remanded the claim to determine whether he was entitled to retroactive disability benefits from an earlier date. Cushman v. Soc. Sec. Admin., 175 Fed. Appx. 861, 862 (9th Cir. 2006). In August of 2007, the Social Security Administration Appeals Council ("Council") reconsidered Mr. Cushman's claim and found that he had been continuously disabled since February of 1976. The Council extended his benefits accordingly.

With respect to his veteran's claim, Mr. Cushman appealed the Board's August 2005 decision to the Veterans Court, challenging the Board's statutory interpretation and making CUE and due process arguments related to the consideration of his

nonconforming medical records. In February of 2008, a single-judge panel of the Veterans Court affirmed the Board. Mr. Cushman moved for reconsideration by a full panel. The motion was denied in May of 2008 and judgment was entered in June. In July, Mr. Cushman timely appealed the case to this court.

## II. THE GOVERNMENT'S POST-ARGUMENT MOTION FOR VOLUNTARY REMAND

As a threshold matter, we consider the government's motion for voluntary remand, submitted after oral argument before this court. During oral argument, the panel questioned the government attorney as to why the DVA was reluctant to give Mr. Cushman a new hearing without the presence of the altered document. The government attorney indicated a willingness to reassess its position, and asked for two weeks in which to consider whether the parties could resolve the matter.

Following oral argument, the panel suspended proceedings in the case for thirty days in order to allow the parties to reach a settlement. At the conclusion of the thirty-day period, the government informed the panel that no settlement was reached. The panel resumed proceedings. The following week the government submitted a motion for voluntary remand to allow the Board to reconsider its 1980 and 1982 decisions and in the alternative to send the case to "mandatory mediation." Mr. Cushman opposed the motion, arguing that voluntary remand would not provide the requested relief and would preclude Mr. Cushman from petitioning for attorneys fees as a prevailing party. He also argued that the government previously opposed mediation and should not now be allowed to change its position.

The government's motion for voluntary remand was accompanied by a proposed order stating only that the case was remanded "to enable the Board to reconsider its

1980 and 1982 decisions." We find that mere voluntary reconsideration does not guarantee Mr. Cushman adequate relief. The terms of the proposed order give no assurance that Mr. Cushman would receive a new hearing, that the determination would be reviewed de novo, or that the proceedings would be conducted without the presence of the altered document. Although the government represents in its supporting memorandum that it will pursue such process, we have no authority to enforce those representations. Moreover, the government's representations do not bind the Board. We therefore must deny the government's motion for voluntary remand, even though the government contends that granting the motion would provide Mr. Cushman the alternate relief that he seeks.

We also deny the government's alternative request for "mandatory mediation." Mr. Cushman did not oppose mediation initially. The government did. We decline to compel Mr. Cushman to mediation at this juncture, after the briefs have been filed, oral arguments have been heard, and the thirty-day suspension to allow settlement has lapsed. We now turn to the merits of Mr. Cushman's appeal.

### III. DUE PROCESS

This court reviews legal determinations of the Veterans Court de novo. Prenzler v. Derwinski, 928 F.2d 392, 393 (Fed. Cir. 1991). If the decision of the Veterans Court is not in accordance with law, this court has authority to modify, reverse, or remand the case as appropriate. 38 U.S.C. § 7292(e)(1).

This court has jurisdiction to interpret constitutional provisions "to the extent presented and necessary to a decision," id. § 7292(c), and authority to "decide all relevant questions of law, including interpreting constitutional and statutory provisions."

Id. § 7292(d)(1).  This court has jurisdiction and authority to consider a free-standing constitutional issue independently from the CUE framework typically applicable to appellate review of veterans' claims.  See In re Bailey, 182 F.3d 860, 869-70 (Fed. Cir. 1999).

Mr. Cushman asserts that he was denied a full and fair hearing on the factual issues of his claim due to the presence of the altered medical record.  Mr. Cushman therefore raises a genuine issue of procedural due process under the Fifth Amendment to the Constitution.  Cf. Pierre v. West, 211 F.3d 1364, 1367 (Fed. Cir. 2000).  We find that this court has jurisdiction to resolve the due process issue in deciding his claim.

In order to allege that the denial of his claim involved a violation of his due process rights, Mr. Cushman must first prove that as a veteran alleging a service-connected disability, he has a constitutional right to a fundamentally fair adjudication of his claim.  The right to due process of applicants for veterans' benefits is an issue of first impression for this court.

The Due Process Clause of the Fifth Amendment guarantees that an individual will not be deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  Due process of law has been interpreted to include notice and a fair opportunity to be heard.  See Mullane v. Cent. Hanover Tr. Co., 339 U.S. 306, 313 (1950).  To raise a due process question, the claimant must demonstrate a property interest entitled to such protections.  Richard v. West, 161 F.3d 719, 723 (Fed. Cir. 1998).

It is well established that disability benefits are a protected property interest and may not be discontinued without due process of law.  See Atkins v. Parker, 472 U.S.

115, 128 (1985); <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976). The Supreme Court has not, however, resolved the specific question of whether applicants for benefits, who have not yet been adjudicated as entitled to them, possess a property interest in those benefits. <u>See</u> <u>Lyng v. Payne</u>, 476 U.S. 926, 942 (1986); <u>Walters v. Nat'l Ass'n of Radiation Survivors</u>, 473 U.S. 305, 312, 320 n.8 (1985); <u>Peer v. Griffith</u>, 445 U.S. 970 (1980) (Rehnquist, J., dissenting).

The Supreme Court has, however, offered guidance relevant to our resolution of this question by explaining, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 756 (2005) (quoting <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972)). The Court has also clarified that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." <u>Id.</u> at 756 (citing <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 462-63 (1989)).

In <u>Richardson v. Perales</u>, the Supreme Court strongly implied that certain due process protections are applicable to the adjudicative administrative proceedings associated with social security disability claim hearings. 402 U.S. 389, 401-02 (1971). The Court has also noted "that the benefits at stake in DVA proceedings, which are not granted on the basis of need, are more akin to the Social Security benefits involved in

Eldridge than they are to the welfare payments" at issue in Goldberg.[1] Nat'l Ass'n of Radiation Survivors, 473 U.S. at 333. We believe the protected property interests implicated in social security proceedings provide a helpful analogy in assessing the property interests of veteran applicants for service-connected disability benefits.

Like the statutorily created right of an eligible recipient to social security benefits, entitlement to veteran's benefits arises from a source that is independent from the DVA proceedings themselves. 38 U.S.C. § 1110 (2000) (providing for wartime disability compensation); id. § 1121 (providing for wartime death compensation for designated heirs and dependents); id. § 1131 (providing for peacetime disability compensation); id. § 1141 (providing for peacetime death compensation for designated heirs and dependents). These statutes provide an absolute right of benefits to qualified individuals.

Although the due process question is one of first impression for this court, the Ninth Circuit has previously held that "both applicants for and recipients of [service-connected death and disability] benefits possess a constitutionally protected property interest in those benefits." Nat'l Ass'n of Radiation Survivors v. Derwinski, 994 F.2d 583, 588 n.7 (9th Cir. 1992). Additionally, seven of our sister circuits have addressed similar questions concerning statutorily mandated benefits. "Every regional circuit to

_____

[1] The Court has also commented that recipients in Goldberg, who had not yet shown that they were within the statutory terms of eligibility, "had a right to a hearing at which they might attempt to do so." Roth, 408 U.S. at 577 (commenting on Goldberg v. Kelly, 397 U.S. 254 (1970)). The right to a hearing necessarily implies the right to a fair hearing. See, e.g., Mullane, 339 U.S. at 315 ("[P]rocess which is a mere gesture is not due process."). As such, Roth suggests that at least some due process protections attach to procedures for determining eligibility for benefits even outside of the social security context.

address the question . . . has concluded that applicants for benefits, no less than benefits recipients, may possess a property interest in the receipt of public welfare entitlements." Kapps v. Wing, 404 F.3d 105, 115 (2d Cir. 2005); see, e.g., Kelly v. R.R. Ret. Bd., 625 F.2d 486, 489-90 (3d Cir. 1980) (holding an applicant for a disabled child's annuity was denied due process); Mallette v. Arlington Cnty. Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 634-35 (4th Cir. 1996) (concluding that a statute's mandatory language gives an applicant a property interest in retirement benefits which triggers procedural due process protection); Hamby v. Neel, 368 F.3d 549, 559-60 (6th Cir. 2004) (affirming that eligible applicants for Medicaid benefits have a legitimate claim of entitlement which invokes procedural due process); Wright v. Califano, 587 F.2d 345, 354 (7th Cir. 1978) ("[Benefit] denials do not necessarily deserve less due process than terminations."); Daniels v. Woodbury Cnty., Iowa, 742 F.2d 1128, 1132 (8th Cir. 1984) (refusing to distinguish between applicants and recipients when analyzing the due process requirements for determining eligibility for Iowa welfare benefits); Gonzalez v. Sullivan, 914 F.2d 1197, 1203 (9th Cir. 1990) ("An applicant for social security benefits has a property interest in those benefits."); Ressler v. Pierce, 692 F.2d 1212, 1214 (9th Cir. 1982) (affirming that applicants for federal rent subsidies are entitled to due process protection); Griffeth v. Detrich, 603 F.2d 118, 119 (9th Cir. 1979) (holding that applicants for welfare benefits had a property interest or legitimate claim of entitlement and were entitled to due process to protect that interest); see also Cook v. Principi, 318 F.3d 1334, 1352 (Fed. Cir. 2002) (en banc) (Gajarsa, J. dissenting) (concluding that the statutory mandate of veteran disability benefits entitles applicants to procedural due process).

In response, the government cites three cases in which circuit courts found that an individual did not obtain a protected property interest merely by applying for benefits. See Banks v. Block, 700 F.2d 92 (6th Cir. 1983) (declining to find a property interest in food stamp benefits after expiration of the eligibility period); Holman v. Block, 823 F.2d 56 (4th Cir. 1987) (same); DeJournett v. Block, 799 F.2d 430 (8th Cir. 1986) (finding that an applicant had no protected property interest in a discretionary loan). The cited cases, however, are distinguishable from the present case. Banks and Holman deal with the rights of an applicant who is no longer eligible for benefits. DeJournett deals with the denial of a discretionary benefit. As cited above, the respective circuits of these three cases have found that due process attaches in the context of nondiscretionary benefits.

Veteran's disability benefits are nondiscretionary, statutorily mandated benefits. A veteran is entitled to disability benefits upon a showing that he meets the eligibility requirements set forth in the governing statutes and regulations. We conclude that such entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.

## IV. MR. CUSHMAN'S DUE PROCESS CLAIM

We now turn to the issue of whether Mr. Cushman acquired a due process right in his claim for benefits that was violated by the process he received from the Portland Regional Office, Board, and Veterans Court.[2]

---

[2] We note that Mr. Cushman challenged the 1977 denial of his claim promptly upon discovering the nonconforming versions of his medical record. It is not disputed that his free-standing due process claim was timely raised.

When Mr. Cushman was injured while serving in a United States combat infantry battalion in Vietnam, he acquired a legitimate claim of entitlement to veteran's disability benefits under 38 U.S.C. § 1110 et seq. Applications for benefits cannot be denied unless the DVA factually determines that the applicant does not suffer from a disability originating from service. <u>Id.</u>

The government asserts that even if due process attaches to veteran's benefits, Mr. Cushman received adequate process, citing his multiple hearings before the Regional Office and appeals before the Board, Veterans Court, and this court. The sheer number of times that Mr. Cushman has appealed the denial of his claim, however, is not relevant to the question of whether he has ever received a fair hearing. The initial determination of Mr. Cushman's TDIU claim was tainted by the presence of an improperly altered document. That initial determination has been subject to nothing but deferential review, on a record that still contained the altered document. The source of the fundamental unfairness that tainted the initial evaluation of Mr. Cushman's claim was never removed from any prior proceedings. Therefore, none of the subsequent appeals and rehearings that Mr. Cushman received satisfied his due process right to a fair hearing on the merits of his disability claim.

The government argues that the question of what process is due does not turn upon the allegations of an individual claimant. The government cites language from <u>National Association of Radiation Survivors</u>, stating that "a process must be judged by the generality of cases to which it applies, and therefore, process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for them all." 473 U.S. at 330. The government reasoned in its brief, and elucidated in oral

argument, that because the veteran's claims procedures provide due process "generally," there is no violation when due process is denied on the basis of an error in an individual case. The government's position is predicated on a misinterpretation of National Association of Radiation Survivors.

The challenger in National Association of Radiation Survivors alleged that the $10 fee limitation for attorneys representing veterans in disability cases denied him a meaningful opportunity to obtain legal counsel. Id. at 307. The Court reasoned that the statutorily imposed fee limitation did not violate due process because a majority of veterans are able to effectively pursue their claims without counsel. Id. at 330.

Unlike the veteran in National Association of Radiation Survivors, Mr. Cushman does not challenge an entire statutory scheme. He does not challenge the adequacy of any procedures in place for filing a claim for veteran's benefits. He does not challenge the constitutionality of the CUE framework provided in 38 U.S.C. § 7111.[3] Mr. Cushman instead argues that the government failed to fairly apply the existing procedures in his case due to the introduction and consideration of improperly altered medical records.[4] We agree.

---

[3] Mr. Cushman does not challenge the constitutionality of CUE itself, but he does assert that the burdens of proof applicable to CUE claims do not apply to his free-standing due process claim. We agree that the burdens of proof typically applicable to due process claims also apply to such claims raised in the context of veteran's benefits.

[4] Mr. Cushman also raises allegations concerning unpublished DVA policies aimed at reducing TDIU ratings. Such allegations are entirely speculative and Mr. Cushman can show no nexus between such policies and the denial of his claim. We therefore confine our due process analysis to the presence of altered documents in Mr. Cushman's medical record.

The procedural framework for adjudicating claims must be sufficient for the large majority of a group of claims in order to be constitutionally adequate for all. See Nat'l Ass'n of Radiation Survivors, 473 U.S. at 330. A fundamentally fair adjudication within that framework, however, is constitutionally required in all cases, and not just in the large majority. Cf. Romano v. Oklahoma, 512 U.S. 1, 12-13 (1994) (explaining that the admission of improper evidence is a denial of due process where it infects the proceedings with fundamental unfairness.) The government's application of the generality standard to Mr. Cushman's claim is therefore misdirected.

The presentation of improperly altered material evidence has been found to constitute a due process violation in analogous cases. See, e.g., Grillo v. Caughlin, 31 F.3d 53, 56-57 (2d Cir. 1994) (finding that the presentation of an altered urinalysis record was a violation of due process in the criminal context); Stemler v. City of Florence, 126 F.3d 856, 872 (6th Cir. 1997) (applying Grillo in the civil context). Fraudulent intent on the part of the presenter of the false evidence is not required to find a due process violation. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (finding that the state's inadvertent but prejudicial suppression of favorable evidence was a due process violation). Alterations of evidence are material for due process purposes if there is a "reasonable probability of a different result" absent those alterations. Cf. Kyles v. Whitley, 514 U.S. 419, 434 (1995).

We find, in this case, that the presentation of the altered medical document was indeed prejudicial. The Regional Office was instructed by the Board on remand to consider medical evidence in determining Mr. Cushman's employability. The altered document was the only piece of medical evidence that addressed Mr. Cushman's then

current employability. The substance of the alterations spoke directly to the type of work that Mr. Cushman could perform in light of his progressing disability. Although, as the government argues, the Regional Office and Board did not discuss which evidence was determinative, any reasonable fact finder would have at least considered the altered medical record under these circumstances. The content of the altered document indicated that Mr. Cushman was more employable than did the content of the unaltered document. We find that there is a reasonable probability that the result of Mr. Cushman's TDIU hearing would have been different in the presence of the unaltered document instead of the altered document.

Accordingly, consideration of the altered document instead of the unaltered document in adjudicating Mr. Cushman's claim was a violation of his constitutional right to a fair hearing. Mr. Cushman is entitled to a new hearing without the presence of the altered document. We therefore vacate the decision of the Veterans Court and remand the case with instructions to further remand to the Board for a de novo determination of Mr. Cushman's 1977 TDIU request.

## V. MR. CUSHMAN'S CUE CLAIMS

In addition to raising a due process claim, Mr. Cushman raises CUE claims relating to the statutory employability standard applied to his determination, as well as the consideration of his altered medical record.[5] Mr. Cushman argues that his CUE claims compel this court to reverse the decision of the Veterans Court and issue an

---

[5] Mr. Cushman's allegations concerning the unpublished DVA policies discussed in note 4, above, are also raised in his CUE claims and we similarly reject such allegations.

order directing the Veterans Court to grant Mr. Cushman a TDIU rating effective May 3, 1977.

Mr. Cushman's CUE arguments challenging the consideration of his altered medical record and the statutory construction and interpretation of the employability standard applied to his TDIU claim fall within the scope of this court's review under 38 U.S.C. §§ 5109 and 7292. CUE is a "very rare and specific kind of error." 38 C.F.R. § 20.1403(a). To establish CUE, an appellant must prove (1) either the correct facts, as they were known at the time, were not before the Board, or the statutory or regulatory provisions in effect at the time of the decision were incorrectly applied, and (2) the alleged error was outcome determinative. Id.

Mr. Cushman argues that consideration of the altered medical record constitutes CUE because the correct facts, as they were known at the time, were not before the Board. We agree with Mr. Cushman that the correct facts as known were not before the Board. Mr. Cushman is unable to show, however, whether this error was outcome determinative because the Board did not specify the evidence on which it relied in denying Mr. Cushman's claim. A remand to the Board for a more appropriate explanation of its reasoning is nonetheless unnecessary in view of our resolution of Mr. Cushman's due process claim and the relief awarded in Part IV above.

With respect to Mr. Cushman's employability standard argument, we find that the Board's 1980 and 1982 statutory construction and interpretation of the relevant standard did not constitute CUE based on the altered medical record. Mr. Cushman alleges that the 1980 and 1982 Board decisions applied the wrong employability standard in denying his claim for TDIU. Mr. Cushman's claim for TDIU under 38 C.F.R. § 4.16 requires him

to demonstrate that his injury precludes him from securing "substantially gainful employment." "Unemployability" under 38 C.F.R. § 4.18 requires an individual to satisfactorily show preclusion from all further employment.

Although the Board uses TDIU language and mentions the "substantially gainful employment" standard in its discussion, the sentence in which the Board states its ultimate holding uses only the word "unemployable." Mr. Cushman argues that this language indicates that, notwithstanding the mention of the correct standard elsewhere in the discussion, the ultimate decision of the Board was actually based on the wrong standard.

The Board noted in its discussion that Mr. Cushman completed an electronics course and was doing electronics repair work from home at the time of the decision. The Board considered this evidence that "sedentary employment was not precluded." Mr. Cushman argues that his repair work consisted of odd jobs, earning him about $100 per month (less than 25% of the poverty level at the time), and can hardly be considered "substantially gainful." Mr. Cushman argues that neither the Board nor the Veterans Court construed the term "substantially gainful employment," which was a legal error resulting in application of an incorrect statutory standard.

Although the Board uses the term "unemployable" in its decision, Mr. Cushman has not shown that the Board actually employed the wrong standard. The majority of the Board's explanation for its decision uses language from the correct section of the statute. It is only the final sentence that uses language from the wrong section. The choice of wording appears to have been the result of a clerical error or the use of stock language from prior decisions, rather than substantive error.

We also find Mr. Cushman's argument that the Board failed to construe the phrase "substantially gainful employment" to be without consequence. The Board found, in light of the altered medical document, that Mr. Cushman was not incapable of substantially gainful employment because he had electronics training and his condition did not preclude him from sedentary employment. Whether Mr. Cushman's actual electronics work was substantially gainful is irrelevant. The DVA may find that a veteran is physically <u>capable</u> of substantially gainful employment even if he is not currently engaged in such employment. Mr. Cushman has thus failed to show that the outcome of his case would have been different if the Board construed the term as he proposes. We therefore deny Mr. Cushman's request for an order directing the grant of an earlier TDIU effective date. Mr. Cushman is free to argue to the Board or Regional Office on remand that his service-connected disability precluded electronics work that was substantially gainful.

## VI. CONCLUSION

Mr. Cushman demonstrated that his injury meets the service connection requirement of 38 U.S.C. § 1110. Mr. Cushman has a constitutional right to have his claim for veteran's disability benefits decided according to fundamentally fair procedures. We find that this right was violated due to the presence of an improperly altered medical record in Mr. Cushman's file. We vacate the June 6, 2008 decision of the Veterans Court and remand the case with instructions to grant Mr. Cushman a new hearing before the Board to determine de novo and without the presence of the alterations in his medical record whether Mr. Cushman was unable to secure a

substantially gainful occupation between May 3, 1977 and August 31, 1994, because of his service-connected disability.

COSTS

Costs are awarded to Appellant.

VACATED AND REMANDED